David LEWIS, Plaintiff,

v.

COOK COUNTY DEPARTMENT OF CORRECTIONS, Lieutenant Dougherty, Officer Germany, Lieutenant Hickey, Sergeant Tribillco, Defendants.

No. 96 C 4742.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 15, 1998.

David L. Lewis, Dixon, IL, pro se.

Harry John Devereux, Assistant State's Attorney, Terry L. McDonald, Allen Stewart Kirsh, State's Attorney's Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

David Lewis ("Plaintiff") was an inmate of the Cook County Department of Corrections. He is currently incarcerated at the Dixon Correctional Center. He has filed a *pro se* complaint under 42 U.S.C. § 1983 against the following Cook County Department of Corrections Correctional Officers: Lieutenant Hickey, Lieutenant Dougherty, Officer Germany, and Sergeant Tribillco (collectively "Defendants"), alleging various constitutional violations.[1] His complaint purports to allege claims for retaliation, denial of access to the courts, and possibly denial of equal protection, against the officers in both their official and individual capacities. This matter is now before the Court on Defendants' motion to dismiss for failure to state a claim upon which relief can be granted. For the reasons stated below, the motion is granted with respect to the claim against the officers in their official capacity and with respect to the claims of denial of access to the courts and denial of equal protection, and the motion is denied with respect to the claim of retaliation and with respect to the claims against the officers in their individual capacity.

1. The Cook County Department of Corrections was dismissed as a party pursuant to an order

## I. The Standard of Review

The court must accept as true the well-pleaded factual allegations in a complaint and draw all rational inferences in favor of the plaintiff, in assessing a motion to dismiss for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 72, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir.1996). Only when the plaintiff is unable to prove any set of facts in support of his claim which would entitle him to relief may the court dismiss a complaint for failure to state a claim under Fed. R.Civ.P. 12(b)(6). *Porter*, 93 F.3d at 305. The standard for pleading requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). It is not until later in the case, such as in consideration of a motion for summary judgment, that the parties are required to match facts against legal elements. *Palmer v. Board of Education of Community Unit Sch. Dist.*, 46 F.3d 682, 688 (7th Cir.1995). "It is not necessary to specify particular legal theories in a complaint, so long as the facts alleged give adequate notice to the defendant of the basis of the suit." *Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir.1997).

In addition, the Supreme Court has articulated a different, more lenient standard by which courts should assess pleadings prepared by *pro se* plaintiffs. "We cannot say with assurance that under the allegations of the *pro se* complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Consequently, *pro se* complaints must be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Courts must ensure that the claims of *pro se* plaintiffs are given "fair and meaningful consideration." *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir.1984). Further-

entered by Judge James H. Alesia on April 9, 1997.

more, courts should not require the complaint to identify the correct legal theory to survive a motion to dismiss. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992).

Many of the cases to which the defendants cited in their motion to dismiss were decided prior to *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), when many courts had heightened pleading requirements. *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir.1994). The Seventh Circuit has specifically examined the impact of *Leatherman* on pleading jurisprudence. *Jackson v. Marion County*, 66 F.3d 151 (7th Cir.1995). *Leatherman*

> rejects the imposition of heightened pleading requirements in cases governed by the Federal Rules of Civil Procedure unless required by the rules themselves, which is to say by Rule 9.... [A] plaintiff in a suit in federal court need not plead facts; he can plead conclusions.... [However,] a plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.

*Id.* at 153. Thus, *Jackson* emphasizes that the standard in federal court is notice pleading.

## II. Background Facts

Plaintiff's *pro se* complaint purports to allege a claim for retaliation, denial of access to the courts, and possibly equal protection. The following facts are gleaned from Plaintiff's complaint. Plaintiff was an inmate who had been detained at Cook County Department of Corrections. On May 1, 1996, Plaintiff filed a grievance against Officer Germany regarding an issue that arose out of an occasion when Plaintiff was permitted to clean the law library unsupervised. Plaintiff now asserts that Defendants' took retaliatory action one month later in response to that earlier grievance. It is this later, allegedly retaliatory, incident which gives rise to the present case.

Lieutenants Hickey and Dougherty, and Sergeant Tribillco observed that Plaintiff had a visible red mark on his neck, questioned him about it, and called for a doctor to examine it. The doctor diagnosed the mark as a "hickey" while plaintiff explained that it was a pimple. Lieutenant Dougherty asked Plaintiff whether he had been attacked or was a homosexual. Plaintiff denied both suggestions. Nevertheless, Lieutenant Dougherty decided to rely on the doctor's diagnosis and, as a result, terminated Plaintiff's law library position. Plaintiff alleges that this decision was a result of a conspiracy between Lieutenant Hickey, Lieutenant Dougherty, Sergeant Tribillco, and Officer Germany. To support this theory, Plaintiff alleges that Officer Germany observed his neck injury earlier in the day at the dispensary. As the Court understands his complaint, Plaintiff alleges that his dismissal was prompted by his earlier grievance.

## III. Discussion

### A. Retaliation

■ Plaintiff's complaint states a claim for retaliation pursuant to the standard set forth by the Seventh Circuit in *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir.1994), because he has properly alleged a chronology of events from which retaliation can be inferred. "To state a cause of action for retaliatory treatment, a complaint need only 'allege a chronology of events from which retaliation may be inferred.' " *Id.* This chronology of events must include an action which changed for the worse the conditions experienced by the plaintiff. *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir.1985) (suggesting that a move from a single to a double cell is a worsened condition); *Murphy v. Lane*, 833 F.2d 106, 108–09 n. 1 (7th Cir.1987) (stating that a transfer to prison unequipped to handle the plaintiff's psychiatric needs is a worsened condition). However, these requirements are applied less stringently when reviewing complaints drafted by *pro se* plaintiffs. *Benson*, 761 F.2d at 342.

■ Defendants believe that Plaintiff has not met that standard and argue that Plaintiff urges a "fallacy of inductive inference that, just because one thing happened after another, the later was caused by the earlier."

Defs.' Br. at 4–5. However, *Black v. Lane* does not require retaliation to be the only logical inference from the chronology of events pleaded, but requires only that retaliation *may* plausibly be inferred. *Black*, 22 F.3d at 1399; *see also Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). In the present case, the Court finds that, when viewed with the leniency afforded to *pro se* plaintiffs, Plaintiff pleaded a chronology of events and one, but certainly not the only, reasonable inference is that the actions taken by Defendants were retaliation.[2] In addition, Plaintiff did suffer a worsened condition in that Plaintiff was dismissed from his library job, a job which, as his pleadings demonstrate, was very important to him. *Benson*, 761 F.2d at 342; *Murphy*, 833 F.2d at 109 n. 1. Thus, Plaintiff has met the pleading requirements laid out by *Black v. Lane*.

Defendants argue that Plaintiff's allegations regarding retaliation are insufficient to state a claim in that plaintiff alleged only the ultimate legal conclusion of retaliation and provided no facts to support this claim. However, Defendants argument must fall. Defendants cite *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir.1985), for the proposition that "merely alleging the ultimate fact of retaliation is insufficient to state a cause of action." However, *Benson* puts forth the same exact standard as *Black*. *Black* in fact quotes *Benson* for the standard. *Black*, 22 F.3d at 1399. Consequently, as laid out above, Plaintiff has met that standard.

Plaintiff has not only asserted the ultimate legal conclusion of retaliation but also has provided the factual details of the events which led Plaintiff to bring his claim. Thus, Plaintiff has met the *Benson* requirements.

■ Defendants also argue that Plaintiff's factual scenario laid out in his complaint is inconsistent with his claim and, therefore, his claim should be dismissed. A plaintiff's claim can be dismissed if the plaintiff pleads particulars which are inconsistent with his or her claim or which demonstrate that the plaintiff does not have a viable claim. *Thomas v. Farley*, 31 F.3d 557, 558–59 (7th Cir. 1994).[3] Defendants argue that Plaintiff provided an objectively independent basis for the action taken against Plaintiff, that is, that Plaintiff's injury led to the termination of his library job, and this rebuts his claim of retaliation. However, the Court finds that the Plaintiff's injury and retaliation are equally plausible explanations for the termination of Plaintiff's library job. The facts Plaintiff provided are not so inconsistent with his claim so as to warrant dismissal. The resolution of these issues should be left to summary judgment or trial.

Defendants argue that Plaintiff needs to show that he was prejudiced in the litigation of a non-frivolous claim in order to meet the elements of a retaliation claim. Defendants rely on *Martin v. Davies*, 917 F.2d 336 (7th Cir.1990), for this proposition. Defendants' understanding of the rationale in *Martin* is

2. Plaintiff pleaded the following chronology of events. On May 1, 1996, Plaintiff filed a grievance against Officer Germany. One month later, Sergeant Dougherty terminated Plaintiff from his library position. Dougherty based this decision on the grounds that Plaintiff had an injury on his neck. A doctor informed Dougherty that the injury was a hickey while Plaintiff argued that it was a pimple. To support his argument that his termination was retaliation, Plaintiff alleged that Officer Germany observed his neck injury earlier in the day, and Defendants all conspired together to terminate Plaintiff.

While one month did pass between the grievance and Plaintiff's termination, the Court concludes that Plaintiff's case is not so analogous to *Benson* to warrant dismissal of Plaintiff's retaliation claim for failure to state a claim. First, in *Benson* the period of time before the alleged retaliation was five months as opposed to one, prompting the court in *Benson* to state that such

a lengthy time period precluded an inference of retaliation. *Benson*, 761 F.2d at 342. Second, Benson's complaint failed to allege worsened conditions. *Id.* Third, the court put a lot of reliance on the fact that the complaint was drafted by an attorney as opposed to a *pro se* plaintiff stating that "Benson's complaint might be deemed sufficient under the standard of review for pro se complaints...."

3. "[W]ith immaterial exceptions the Federal Rules of Civil Procedure do not require that a complaint describe the alleged wrongdoing of which it complains with any particularity. But if a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck-he has pleaded himself out of court. He is not saved by having pleaded a legal conclusion that if consistent with the facts would establish his right to relief, for he has shown that it is inconsistent with the facts." *Thomas v. Farley*, 31 F.3d 557, 558–59 (7th Cir.1994) (citations omitted).

incorrect. There were six claims that the court analyzed in *Martin*, and Defendants confuse the reasoning that the court used to address Martin's claims for interference with access to the courts with the reasoning that the court used to dismiss Martin's retaliation claim. *Id.* at 338, 340–41. The retaliation claim in Martin was not dismissed because of a failure to plead prejudice as Defendants claim but because the Court concluded that "Martin's retaliation charge makes no sense in light of his other factual allegations." *Id.* at 341. In other words, the plaintiff's claim was dismissed because he pled particulars that disproved his retaliation claim, not because he failed to plead prejudice. Consequently, in that Plaintiff has met the sole requirement of pleading a chronology of events from which retaliation may be inferred, the Court concludes that the plaintiff has stated a claim for retaliation. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir.1994).

## B. Interference with Access to the Courts

Plaintiff has failed to state a claim for interference with access to the courts because plaintiff did not allege or show actual injury. "Prison officials have an affirmative duty to provide inmates with reasonable access to courts, which includes providing access to adequate libraries (or counsel)." *Martin*, 917 F.2d at 338 (citing *DeMallory v. Cullen*, 855 F.2d 442, 446 (7th Cir.1988)). However, reasonable access to the courts does not translate to unlimited access to law libraries. *Id.*

■ *Lewis v. Casey* dictates what prisoners need to plead in order to state a claim of denial of access to the courts. 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Under the holding of *Lewis*, a prisoner must show actual injury in order to assert a constitutional violation. *Id.* at 2180. The *Lewis* Court stated that the prison officials' actions must hamper the prisoner's "capability of bringing contemplated challenges to sentences or conditions of confinement" in order to state a cause of action for interference with access to the courts. *Id.* at 2182. Plaintiff has not alleged that his lack of access to the law library has frustrated or impeded in any way his efforts to litigate a non-frivolous challenge to a sentence, to a pending criminal charge, or to an aspect of his confinement. Consequently, he cannot show any actual injury and, therefore, has failed to make out a claim of denial of access to the courts.

## C. Equal Protection Claim

Plaintiff's complaint also appears to bring an equal protection claim stating that Defendants "deprived Plaintiff of his right to equal protection of the laws...." Pl.'s Compl. at 4–B. The facts, as Plaintiff presents them, suggest that Lieutenant Dougherty forbade Plaintiff from continuing with his library job, because of the injury on Plaintiff's neck, that is, the hickey. There is the possibility of an equal protection claim arising out of those facts.

■ If Plaintiff seeks to use those facts as the basis for a claim of denial of equal protection he must at a minimum allege that he is a homosexual. An equal protection claim requires a plaintiff to allege that he is a member of an identifiable minority and that the plaintiff's membership in that minority was the cause of differential treatment. *Nabozny v. Podlesny*, 92 F.3d 446, 457 (7th Cir.1996). "[T]he Constitution prohibits intentional invidious discrimination between otherwise similarly situated persons based on one's membership in a definable minority, absent at least a rational basis for the discrimination. There can be little doubt that homosexuals are an identifiable minority subjected to discrimination in our society." *Nabozny v. Podlesny*, 92 F.3d 446, 457 (7th Cir.1996). At a minimum, Plaintiff's pleadings show that he was treated differently, and the motivation for that differential treatment was the hickey on his neck. Plaintiff has not alleged that he is a homosexual. Thus, it remains for Plaintiff to allege that he is a member of an identifiable minority, in other words, that he is a homosexual. Plaintiff's claim for equal protection is denied and he is given thirty-five days to amend his complaint to include a statement regarding possible homosexual orientation if he wishes to bring an equal protection claim.

**D. Claims against Hickey, Tribillco, and Germany in Their Individual Capacities**

Plaintiff has stated claims against Hickey, Tribillco, and Germany in their individual capacities because he has alleged that they all were responsible in some way for the constitutional deprivation that Plaintiff suffered. "[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements of a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). To state a cause of action against a person in his or her individual capacity, there must be an allegation of direct responsibility for the alleged constitutional deprivation. *Moore v. Indiana*, 999 F.2d 1125, 1129 (7th Cir.1993). In the present case, Plaintiff made an allegation of direct responsibility when he stated that "Defendants Hickey, Tribillco, Dougherty, and Germany, encouraged, directed, ratified, and knowingly acquiesced in the actions of Defendant Germany, as described above, and did so both individually and in pursuance of a common plan or design, deliberately singling out the Plaintiff for harsh and discriminatory treatment." Pl.'s Compl. at 4–B.

Defendants base their argument that Plaintiff has not stated a claim against these three officers in their individual capacity on *Potter v. Clark*, 497 F.2d 1206 (7th Cir.1974). In that case the plaintiff's *pro se* complaint included one of the defendants' names only in the caption of the complaint and the complaint did not include any allegations regarding any actions by that defendant. *Id.* at 1207. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." *Id. Potter* is distinguishable from the present case, however, because factual allegations are made against all of the defendants, not just Dougherty. The three additional defendants are not just named in the caption, as in *Potter*. For instance, Plaintiff alleges that Defendant Germany saw Plaintiff earlier in the day and "had ample time to view the Plaintiff's neck." Pl.'s Compl. at 4–A. Further, Plaintiff alleges that "[t]his action of [sic] the part of Defendant Germany was the retaliatory efforts of the aforementioned Defendant, because of a[sic] inmate grievance the Plaintiff submitted against Defendant Germany." *Id.* With regards to Defendants Hickey, Dougherty, and Tribillco, Plaintiff stated that "Defendants Hickey, Dougherty, and Tribillco questioned the Plaintiff about a mark, reddened in color, on the Plaintiff's neck." Pl.'s Compl. at 5. Thus, because Plaintiff made allegations about all the defendants and did not just include their names in the caption, this present case is not analogous to *Potter*.

Defendants argue that participating in the questioning or observing the mark on the plaintiff's neck is insufficient to make the required affirmative link to Plaintiff's injury, that is, Defendant Dougherty's decision to end Plaintiff's job in the law library. However, many of the cases that Defendants cite in support of their position address the issue of respondeat superior liability, stating that that is not a sufficient link. *See, e.g., Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). To the contrary, Plaintiff's allegations go well beyond a simple assertion of respondeat superior liability on the part of any single defendant. Plaintiff has alleged that three of the defendants questioned Plaintiff about the mark on his neck and the fourth observed it. Pl.'s Compl. at 4–A, 5. Plaintiff has alleged that all of the defendants conspired to deny Plaintiff any access to legal materials in violation Plaintiff's constitutional rights. Pl.'s Compl. at 4–B. Conspiracy, as opposed to mere supervision, is enough of an affirmative link, especially when all the officers had knowledge of the mark on Plaintiff's neck, for Plaintiff's claim, especially when viewed with the leniency afforded to *pro se* litigants, to survive a motion to dismiss.

### E. Claims against the Officers in Their Official Capacities

 Plaintiff has failed to state a claim against Defendants in their official capacities because there are no allegations of policy, custom, or practice in Plaintiff's complaint. It is well established that suits against government officers in their official capacities are actually claims against the government entity for which the officers work. *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). Since § 1983 does not recognize the theory of respondent superior as a basis for liability, a plaintiff must allege that he or she suffered injuries of a constitutional magnitude as a result of an official policy, custom, or practice in order to prevail on an official capacity claim under § 1983. *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

> The caselaw has identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734–35 (7th Cir.1994) (citations omitted). Plaintiff's complaint is devoid of any allegations of policy, custom, or practice. A single act or decision of a final policymaker can establish municipal policy; to do so, however, one must first allege that the defendant is a final policymaker. *Id.* at 735. This, Plaintiff also failed to do; consequently, Plaintiff has failed to state a claim against Defendants in their official capacity.

 The *Baxter* case provides a factual analogy which demonstrates why Plaintiff has failed to state a claim against Defendants in their official capacity. In the *Baxter* case the plaintiffs brought suit against the principal of a school in his official capacity. *Id.* The plaintiffs argued that the principal in his official capacity had sufficient policy-making authority for his decisions to represent the official policy of the school corporation. *Id.* The principal argued that the complaint failed to identify him as a policy maker and, consequently, he could not be held liable in his official capacity. *Id.* The court found that the complaint was devoid of any allegation that the principal was a final policy maker and affirmed a dismissal of the principal. *Id.* The present case is analogous. Plaintiff made no allegations that would demonstrate that the named defendants, all correctional officers, are final policymakers for the Cook County Department of Corrections. To the contrary, claims of retaliatory and discriminatory treatment imply that this was an isolated incident affecting only the Plaintiff. Consequently, Plaintiff has failed to state a claim against Defendants in their official capacity.

### III. CONCLUSION

For the foregoing reasons, **Defendant's motion to dismiss is hereby GRANTED IN PART and DENIED IN PART** pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Plaintiff's complaint fails to state a claims upon which relief can be granted for interference with access to the courts, for denial of equal protection, and against Defendants in their official capacity, but Plaintiff has stated a claim of retaliation against the Defendants in their individual capacity upon which relief can be granted. Plaintiff is given thirty-five days to amend his complaint if he desires to add an equal protection claim. Defendants are given 21 days to answer or otherwise plead to the complaint. **SO ORDERED THIS 15 DAY OF DECEMBER, 1998.**